081132, 1st Technology v. Rational Enterprises. Mr. Agarpis. Good morning, Your Honor. May I please record? This is an appeal of the denial of Rule 60B motion to set aside a default judgment. This court is guided by two overriding policy considerations. First, Rule 60B is meant to be remedial in nature and must be liberally applied. Second, judgment by default is a drastic step in cases should, whenever possible, be decided on the merits. This appeal comes down to an issue of fundamental fairness. What we have here is a patent case involving a patent that probably nobody infringes. The patent is also likely invalid and is in re-examination. Yet, there is a $46 million default judgment entered without notice and without service of process. Well, that default was precipitated, was it not, by your client's failure to respond to the complaint? My client didn't respond to the complaint because my client never knew about the complaint being filed. My client never received service of process. Well, but the district court found otherwise. That's true, but the district court erred in finding otherwise. The standard of our consideration of that issue is clear error? Well, Your Honor, on a case like this, on a matter involving a procedural matter not unique to patent law, you apply the law of the regional circuit, which is the Ninth Circuit. Falk and Allen says that this Court must accept the moving party's statement, the moving party's factual allegations. But doesn't that apply when considering the factors enunciated in Falk, as opposed to the question of whether service was or was not affected? Well, one looks at whether service was or was not affected when considering the factors in Falk. In Falk, one of the factors is culpable conduct by the moving party, that is, the defendant. There would be culpable conduct when the moving party knew about the complaint but did not respond. So here, when analyzing whether the moving party, that is, Board of Entertainment Group S.A., knew about the complaint, one must accept its factual allegations as true. But Falk deals with the situation where one seeks to set aside a default judgment. That's correct. It's a separate question, is it not, from whether service was affected in the first place? Well, yes, there are separate questions. But if service was not affected, then the judgment is void. And here, we contend that the judgment is void because we never received service of process. Okay. But that, again, would be a question we have to review for clear error. So why don't you tell me where the clear error is in that fact-finding? Yes, Your Honor. The admissible evidence is undisputed that Board of Entertainment Group S.A. was not operating as of the time of service. They became a non-registered taxpaying entity and stopped doing business at the end of September 2006. Service was allegedly made. Well, counsel, you said, I believe there's a declaration that you cite for that proposition. But what you just stated here in court is much stronger than what the declaration actually says, which was they were effectively not doing business as of that date. And I can't really understand what that means, effectively not doing business. Maybe they were finishing up loose ends but not taking on new business. I don't know what it means to effectively not be doing business anymore. Well, Your Honor, the entity still had some trademark rights that it had not finished signing the papers to assign to other entities. But other than that, it was not operating. It was not doing business. It was not located at the address where service of process was actually made or allegedly attempted to be made on Ms. Mora-Flores. Well, but if the district court found service was affected on Ms. Mora-Flores, and if she is actually an officer, director, comptroller, holds significant positions within the company, how can you say that service of process was not affected, given her stature within the company, which did in fact continue to exist at that time, even if it was not continuing to conduct the prior business it had conducted? It did exist, and she was in fact an officer in it. So how does that not affect service of process? We put in a declaration for Ms. Mora-Flores. In that declaration, she says that she was not an officer, director of the company. And what the other side cited to for the proposition that she was is at page 8471 of the record. And if one looks at that carefully, page 8471 to 8472, it says, Nombranientos junta directiva, about two-thirds down the page, and it lists three individuals. Then it says, no existent mas. There are no more. Nombranientos and junta directiva. On the next page, 472, it lists Ms. Mora-Flores' name, but she is not listed as an officer or director. Isn't she the comptroller? She has a title, the fiscal, which is equivalent to a comptroller. Is that right? Well, page 472 says that she's a fiscal. Her declaration, however, says that she was not. No, her declaration doesn't say she was not fiscal, does it? I thought it said what you suggested earlier, which was that she's not an officer or director or something like that. That is true that her declaration does say that she was not an officer or director. Her declaration is at page 368. And she says, I held the title of administrative assistant. But that's not the only title she held, is it? She was a fiscal. Isn't that correct? According to the legal documents on this company, she wasn't just an administrative assistant. She was listed as a fiscal. According to that document, yes. So her declaration really is something that the district court couldn't do. I'm sort of viewed with a credibility skeptical eye, given that she's representing that she's merely an administrative assistant, when in fact she had a legal title in the company that considerably exceeded that. Your Honor, the We're going back to the clear error, and you see that I'm having some trouble overcoming that. Your Honor, whether she was a fiscal or not, what she stated in her declaration is that she was an administrative assistant, and she was not an officer or director. She was not a person who was Well, under Costa Rica law, the other side has put in evidence that it doesn't matter what her title was. But at the time of service of process, November 23, 2006, the entity that was at the address where process was allegedly served was not Bodog Entertainment Group S.A., and she was not employed by Bodog Entertainment Group S.A. She was employed by a different company. And as she states in her declaration Again, counsel, she doesn't state in her declaration at the time of service of process that she was not employed by them any longer. She states at this time, right? What does she say exactly? It's all a matter of minced words here, but I think the words are incredibly important because I think that in general you're stating them to be something different than what they actually are. Well, you're right that this declaration was not perhaps as precise as it could have been, but she does say that as far as she knows, Bodog Entertainment ceased its operations in Costa Rica in or about October 2006. So if it ceased its operations, she was not employed by it at the time. Is there any other evidence in the record other than her statement? Yes. With respect to the corporate status of Bodog? Yes, there's the declaration of Mario Chavez-Salas at 8-10-94, and in that declaration it says, Bodog Entertainment Group, as the court noted earlier, effectively shut down operations in September 2006, and this is Paragraph 4, and has been unregistered as an active taxpayer in Costa Rica. As a result of discontinuation of operations since September 2006. The second issue on this appeal is, even if service had been proper, which we contend it was not, the district court lacked personal jurisdiction over the appellants. The appellants presented evidence that they had no meaningful contacts with the former state of Nevada, and did not perform the allegedly infringing activities about which First Technology complained. In opposition, First Technology relied on inadmissible evidence that was rank hearsay consisting primarily of alleged online news articles and other unauthenticated internet postings. Third, and we've discussed this a little bit already, the district court also failed to analyze the other factors courts in the Ninth Circuit consider on a Rule 60B motion. And again, on a Rule 60B motion, the court must accept, under Fault Beyond, the movement's factual statement. Those factors were whether the plaintiff would be prejudiced. Here the plaintiff pointed to no prejudice at all, no legal prejudice. It wouldn't be more difficult to try the case. Whether the defendant has a meritorious defense, the defendant raised meritorious defenses of non-infringement, in validity, and the patent office appears to agree with Bulldog Entertainment Group S.A. and has granted a request for re-examination of the patent. And finally, whether the defendant's culpable conduct led to the default. Appellants established that all the factors weighed in favor of reversing the district court. And I see that my time is up. I will reserve the remainder of my time for the court. Thank you, Your Honors.  Your Honors, this case is not even close as an appeal. Two Ninth Circuit cases completely resolve the issues raised in this appeal. They are SEC v. Shaw, which is a December 2007 case, and Franchise Holding, which is, I think, a 2004 Ninth Circuit case. The facts of SEC v. Shaw run on four legs with what happened here. And I find it very interesting that SEC v. Shaw was one of our lead cases in our red brief, yet it was not mentioned in the blue brief. It was not mentioned in the gray brief. It was not mentioned by counsel at argument today, but it is the principal case on which we relied. In that case, Mr. Shaw had been sued by the Securities and Exchange Commission. He was tagged in Britain, so there was a British process server who found him and served him. And then later on, there was a default, and he came into court, and he presented a wealth of evidence to try to contradict the process server's affidavit. And what SEC v. Shaw did is they held that there was service of process, and they further held that the standard of review for these issues is, quote-unquote, strong and convincing evidence would be needed to overcome the process server's affidavit. Now, that's the standard of review that would have applied to Bodog, or that did apply to Bodog, in the district court below. And by the way, Your Honor, Judge Lynn, that SEC v. Shaw actually backs up your observations of a few moments ago that Falk v. Allen, certainly it does talk about movements allegations must be accepted, but under Ninth Circuit law, that has to be read to be limited only to the factors of good cause that one might present to try to have a default set aside. That is, the one, two, three factors, culpable conduct or lack of prejudice or meritorious defense. SEC v. Shaw proves that the Falk v. Allen statement, by the way, that was a landlord-tenant case, just to put it in context, the Falk v. Allen statement cannot have any application to review or evaluation of jurisdictional facts, particularly going to service of process or personal jurisdiction. So SEC v. Shaw, Ninth Circuit case, runs on four legs here. Ms. Mora was served. There's a process server affidavit. There were follow-up affidavits for court review in which there was... Counselor, you have to admit that the process server's affidavit was troubling, right? He referred to her as white instead of Hispanic, red hair instead of brown hair. He missed her weight by about 20 percent of her body mass and her age by more than a decade, and she's not that old. Several responses, Judge. First, of course, we're relying on Ms. Mora to tell her what she actually weighed, what her actual height was. You wouldn't suggest a woman would lie about her weight, would you? No, but I'm suggesting that in this instance, where there are other indications where there's lack of credibility in what the declarer was saying, you have to take that with a grain of salt. But more to the point, all of that. Let's say Mr. Vargas was entirely wrong about the physical characteristics of Ms. Mora when he served her, and let's say that they established that beyond any doubt with strong and convincing evidence that Mr. Vargas was a poor judge of women's features. That still doesn't go to the issue of was Ms. Mora served on that date. That only goes to the issue of a person's ability to judge physical characteristics. Why wouldn't it go to was Ms. Mora served at all? Perhaps he actually affected service of process on an entirely different person who has no affiliation whatsoever with the company. And appellants raise that as a possibility. I call that innuendo. But let me address that, and let's assume that even that's true. Let's assume even that Ms. Mora was not the person served, but some other person at those offices. Under Costa Rican law, that still suffices as service of process, and by extension under Rule 4 of the Federal Rules of Civil Procedure. Anybody who's at that place over the age of 15 can be served by the process. Only if the company is still operating there, right? I mean, a totally separate entity is now, in fact, using those offices, and you serve a different person at that totally separate entity. Does that qualify? That would raise an interesting question, but that's not the facts in our case. The evidence of record is that Mr. Vargas says that he went to these offices. And by the way, the address is listed in all of Mr. Vargas' affidavits. The address that he says he went to, nobody's contradicted that he went to that address. The address that he says he went to is the exact same address in Bodog's statements about who they are and where they're located. It's the exact same address that existed in the Costa Rica public records at that time. It's the exact same address that we listed in the complaint when we filed the complaint in our allegations of the parties. So in this case, there's really no reasonable debate that the company that existed at the place where Mr. Vargas went was the defendant's, was the appellate's. What about the declaration of the accountant on page 1094? Two comments about that. First off, that was a declaration presented, of course, one day before the hearing, so well after all the briefing had closed. But the declaration of the so-called external accountant, maybe this is a second point, is actually the declaration of yet another interested party. What Bodog did not reveal to the district court at that time was that Mr. Salas Chavez was actually the treasurer of the organization. So I think we all see a pattern starting here. So he was the treasurer of the organization. He represented to the district court. He was an external accountant. He offered a very carefully worded declaration, which, if you read it closely enough, doesn't actually deny that either there was an operating company at that address at that time. It doesn't really deny that the company still existed after that date and during the November 23rd events service process. And here's my final point on that. We put in evidence, and there have been challenges to admissibility of the evidence, but let's consider it for impeachment, which anything can be considered for impeachment more or less, even if it doesn't strictly meet the rules of evidence. We put in evidence of a Costa Rican news reporter of the fact that the organization was still there as of December of 2007, and that's at A1042 to 1044. I believe for some reason the English translation, which would have been the follow-on page, didn't make it into the appendix, but certainly the substance of it is mentioned on A1042. So all of this innuendo that there is no company operating there, it's all from self-serving parties. It's all interest to testimony. It's all contradicted. Nothing hangs together in appellant's story. So there was an operating company there, and that doesn't even get to the standard of review that your honors must deal with, which is clear error. So SEC v. Shaw runs on four legs here. There's service of process. The judgment is not made. Just out of curiosity, I realize this is not the issue in this case, but how are you going to get your money out of them? I mean, they've got a lot of shells in motion. How are you going to get your money? A lot of people are thinking very hard about that every day. Is it the trademark? Is that what really is the asset that is still in play is the U.S. trademark? One of them, in fact, just days ago, I mean, your honors can take judicial notice of this since it's in a court docket. Just days ago, the federal court in Washington State in Seattle issued a preliminary injunction against the appellants against further attempts to transfer, you know, play hot potato with the trademark, and that's a fraudulent transfer case, which incidentally goes to Mr. DeGaiarfis' comment that we never showed that there was any prejudice if this default is set aside. Well, there's prejudice that you can see in the public record, which is a federal court has issued a preliminary injunction against them just days ago on a fraudulent transfer issue. Certainly, you know, if there's an established capacity to conduct such fraudulent transfers to hide assets, that shows prejudice. But that's one aspect. My client is trying to get a hold of the trademark or at least make it available for judicial sale. My client has successfully petitioned the Washington State court to get a hold of a number of domain names. Those are now in the hands of a state court receiver. And then there are additional things that are happening really on a daily basis. For example, the United States government has begun forfeiture proceedings on millions of dollars that the United States government, with its wild powers, has been able to find tied to appellants. And so my client has submitted a claim in a district of Maryland. I didn't mean to take you too far off track. I'm sorry. Go ahead. Go back. Well, it excites me, as you might imagine. It's something that we think about all the time. And, of course, it goes without saying that there's been no bond posted in this case. So there's been no stay or even attempt to stay execution of the judgment. So the next thing and really the only other thing I have to say, unless there are any questions, is franchise holding is the other side of the coin for our argument, which is that culpable conduct in the Ninth Circuit is all that needs to be found in order to deny a motion to set aside a default judgment. A district court is, quote, unquote, these are the words of franchise holding, free to deny the motion if it finds any of the default factors, one of them, of course, being culpable conduct. And the culpability standard is easily met here. There is no abuse of discretion by the judge to find that it was met here, which is that once there is the establishment of service process by the evidence of record, certainly they were a party who knew about the filing of the action and intentionally decided not to appear and defend the action. What evidence is there that their failure to appear was intentional? In other words, what showing of culpability is on this record other than the fact of default? Several items. First, let me say that there is no other evidence required to fit into that franchise holding category. You anticipated my next question. So franchise holding says you don't need to have ancillary evidence, you don't need to have someone testifying that they ran away when they were served. But even if that were an evidentiary standard we would have had to meet, we did meet it. We showed that Mr. Wynn, who was one of the Bodog lawyers' attorneys in a prior intellectual property dispute, he was notified, he admitted knowing about the filing of the lawsuit. So certainly he wasn't, or he claims that he wasn't representing BEGSA at the time, and we can take that at face value. But the fact that he had represented BEGSA is a factor to be considered. Another factor is there was a press release that we had offered into evidence to the district court which showed that in this prior intellectual property dispute, which apparently Mr. Wynn was representing the appellants, the founder of Bodog, Mr. Ayer, indicated to the plaintiffs in the prior dispute that he was just going to default. You can't find his assets. He was really thumbing his nose at these prior plaintiffs. So I think that also mixes in here. So you're saying culpability in a prior suit taints and warrants a determination of culpability in this suit? It's circumstantial evidence, and we tie it in this way, that the evidence of what they did in the prior suit demonstrates a propensity for acting in this way, demonstrates, I suppose, a motive or a course of action when they're served with a process with a United States federal court. I mean, I think you have support in franchise holding the fact that once a party is served with a notice and a summons and a complaint that the failure to act is in and of itself enough to show culpability. It seems to me a little bit of a stretch to sort of color one's actions in one case based on actions in another case when the test is was there culpable conduct leading up to the default in this case. But it's an interesting case. I don't disagree with that, and that's why I say very lightly that it's circumstantial evidence. He said he wasn't representing them in this case, but he was. He was representing them here. I don't know where he is now, but he was. Right. So Mr. Wynn had represented them before, is representing them here now, and there is some Ninth Circuit authority, and I apologize, I didn't write down the case name, but there is Ninth Circuit authority that says that if a party is in contact with lawyers at the time of default or has dealings with lawyers, legal counsel at the time of default, then that is evidence that when they eventually do not appear that the conduct was culpable. So, Your Honors, of course, I'm available to address any of the many issues that were raised. Any other questions? Thank you very much. Thank you. Thank you, Your Honor. Just a few points regarding Mr. Nguyen's alleged contact with BEXA. The evidence in the record is that at the time when plaintiff's counsel contacted Mr. Nguyen, he was not representing Bodog Entertainment Group S.A. in the litigation. There's no evidence that he had contact with Bodog Entertainment Group. But you say he was not representing them in this litigation. I thought it suggested he had not been retained by them for purposes of this litigation, but that he was, in fact, representing them and related entities in other litigations at that moment in time. It just wasn't this one. Is that wrong? Your Honor, I don't recall anything in the record stating that he did represent them in any other litigation at the time. And all they have is their own lawyer's declaration concerning what Mr. Nguyen said. That's hearsay because Mr. Nguyen is not a party opponent. So I don't think there is any admissible evidence that Mr. Nguyen was representing them in any other litigation at the time. But he did come to represent them in this case as well, isn't that right? Eventually. Yes, he did. And when did he come to represent them? When the plaintiff moved in Washington to seize many domain names, some of which I understand were not even registered to the named defendants. Then that obviously was a very big concern of Bodog Entertainment Group. So he didn't come to represent them in this litigation until after the default was entered? That's correct, Your Honor. Did he represent them in any capacity prior to that, this company? I don't know that there's any evidence in the record of that, Your Honor. I suspect that he did represent them in other matters prior to this litigation, but there's no evidence that at the time of the default. Did he put forth evidence suggesting that he never communicated to the company the fact that he got this phone call? Because, I mean, look, you're a lawyer, you know. Suppose one of your clients, someone calls you and says, we're serving them, blah, blah, blah, blah, blah. You're going to get on the phone and you're going to call them, right? You're not going to put that on the bottom of the pile and bury it. So did he put forth evidence that suggested that he didn't let his client know that he just received a phone call indicating that they had in fact been sued and wanting to communicate notice? I don't believe there's any evidence in the record of that, Your Honor. A couple of other points. Regarding the reliability of the process server's declaration, no police officer would wait two and a half months after a routine traffic stop to write up the events of that traffic stop. That's effectively what we have here. We have Mr. Vargas allegedly serving in November 2006, then he waits two and a half, almost three months, to write up what happened. There's no indicia of reliability in his declaration. Now, in the record at page 81040, we have the Costa Rican identification card for Ms. Mora Flores. That has her age. Well, it has her birth date from which we can calculate her age. She was born in February of 1979, so she would have been 27 at the time of the service, not 38. So it's not just a question of Ms. Mora Flores says this and the process server says this. That is objective evidence of her age. It would be a remarkable coincidence, would it not, that the name of the person served just happens to be essentially the same as the party in question? Well, I don't believe it's a remarkable coincidence at all. Because the name Victoria Mora, now it didn't say Victoria Mora Flores, but Victoria Mora, where did that name come from other than from the woman that was served? Well, Your Honor, we don't have discovery in this case, but my speculation would be is that First Technology did a thorough investigation. It knew who the officers, directors, and anybody else listed on the corporate papers were and would have said find this person. So that's not just an unlikely coincidence, Your Honor. Thank you. Thank you, Your Honor. Case is submitted.